[Cite as *Nationwide Energy Partners, L.L.C. v. Ohio Power Co.*, 2022-Ohio-4099.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Nationwide Energy Partners, LLC, | : | |
| Plaintiff-Appellant, | | |
| | : | |
| v. | | No. 22AP-13 |
| | : | (C.P.C. No. 21CV-7186) |
| Ohio Power Company, d.b.a. AEP Ohio, | | |
| | : | (REGULAR CALENDAR) |
| Defendant-Appellee. | | |
| | : | |

D E C I S I O N

Rendered on November 17, 2022

**On brief:** *Frost Brown Todd LLC, Ashley L. Oliker* and *Zackary L. Stillings*, for appellant. **Argued:** *Bryce McKenney*.

**On brief:** *Porter Wright Morris & Arthur, LLP, James A. King* and *Eric B. Gallon*, for appellee. **Argued:** *Eric B. Gallon*.

APPEAL from the Franklin County Court of Common Pleas

BEATTY BLUNT, J.

{¶ 1} Plaintiff-appellant, Nationwide Energy Partners, LLC ("NEP"), appeals from the December 13, 2021 entry of the Franklin County Court of Common Pleas journalizing the December 3, 2021 decision granting the motion of defendant-appellee, Ohio Power Company, d.b.a. AEP Ohio ("AEP"), to dismiss. For the reasons that follow, we affirm the judgment of the trial court.

## I. Facts and Procedural History

{¶ 2} NEP is in the business of installing and maintaining private electric infrastructure and providing billing management services to multi-family properties.

(Compl., at ¶ 1.) AEP is an electric utility with a statutorily granted, certified territory for electric distribution service comprising large areas of Franklin County, Ohio, and several other surrounding counties. *Id*. at ¶ 2.

{¶ 3} On November 12, 2021, NEP filed a verified complaint for injunctive and other relief against AEP alleging claims for promissory estoppel, promissory fraud, tortious interference with contractual relations, tortious interference with existing and prospective business relations, antitrust violations under the Valentine Act and R.C. 1331, *et seq*., and injunctive relief. (*See generally* Compl.) NEP also filed a motion for temporary restraining order and preliminary injunction.

{¶ 4} In its complaint, NEP alleges that in 2020, it entered into contracts with the landlords or owners of five apartment complexes in Franklin County to provide on-site infrastructure services to assist them in apportioning and billing electric service costs to their respective tenants. (Compl., at ¶ 35-66.) Essentially, NEP serves as the landlord or property owner's billing agent for the electricity that is provided by AEP. *Id*. at ¶ 16.

{¶ 5} NEP further alleges that to perform the contracted services at the five apartment complexes, it submitted work orders on behalf of the landlord or property owner's behalf to AEP to perform the work required to change the utility service to AEP "master meter single account service" at each of the complexes. *Id*. at ¶ 39, 45, 51, 57, 63. NEP alleges, however, that AEP has taken no action towards completing the work orders that have been submitted by NEP, and that despite promises to the contrary, AEP has since indicated that it intends to decline any work orders submitted by NEP. *Id*. at ¶ 69, 73, 91, 92, 94. NEP further alleges that, as a result of AEP's refusal to complete the work orders previously submitted by NEP and AEP's stated intention to deny any future work orders

submitted by NEP, the apartment complexes, their tenants, and NEP have been harmed and irreparably damaged. *Id*. at ¶ 99-108.

**{¶ 6}** On November 22, 2021, AEP filed a motion to dismiss NEP's complaint pursuant to Civ.R. 12(B)(1). (*See* Nov. 22, 2021 Mot. to Dismiss.) In it, AEP asserted that NEP's claims are related to utility service and/or based on AEP's tariff and, therefore, within the exclusive jurisdiction of the Public Utilities Commission of Ohio ("PUCO") under R.C. 4905.26.

**{¶ 7}** On December 3, 2021, the trial court issued its decision granting the motion to dismiss for lack of subject-matter jurisdiction. (Dec. 3, 2021 Decision granting defendant Ohio Power Company, d.b.a. AEP Ohio's motion to dismiss.) In its decision, the trial court found that "although * * * NEP's claims may seemingly be 'sounding in tort or contract,' they are undeniably based upon alleged violations within the scope of R.C. 4905.26 and the PUCO's exclusive jurisdiction." *Id*. at 11.

**{¶ 8}** On January 5, 2022, NEP timely filed this appeal.

## II. Assignments of Error

**{¶ 9}** NEP asserts the following assignments of error for our review:

> [1.] The trial court erred in improperly applying the two-prong jurisdictional test set forth in *Allstate Ins. Co. v. Cleveland Elec. Illum. Co.*, 119 Ohio St.3d 301 (2008), to Plaintiff/Appellant Nationwide Energy Partners, LLC's ("NEP") promissory estoppel, promissory fraud, tortious interference with contractual relations, and tortious interference with existing and prospective business relations claims.

> [2.] The trial court erred in dismissing NEP's antitrust Valentine Act claims under R.C. 1331, et seq., for lack of subject-matter jurisdiction.

[3.] The trial court erred in ruling on NEP's antitrust Valentine Act claims under R.C. 1331, et seq., on an expedited basis.

## III. Law and Analysis

### A. Standard of Review

{¶ 10} "Subject-matter jurisdiction involves ' "a court's power to hear and decide a case on the merits and does not relate to the rights of the parties." ' " *Moore v. Ohio Dept. of Rehab. and Corr.*, 10th Dist. No. 18AP-599, 2019-Ohio-767, ¶ 4, quoting *Robinson v. Ohio Dept. of Rehab. and Corr.,* 10th Dist. No. 10AP-550, 2011-Ohio-713, ¶ 5, quoting *Vedder v. Warrensville Hts.*, 8th Dist. No. 81005, 2002-Ohio-5567, ¶ 14. In considering a Civ.R. 12(B)(1) motion to dismiss for lack of subject-matter jurisdiction, a trial court "determines whether the claim raises any action cognizable in that court." *Id.,* citing *Brown v. Tax Commr. of Ohio,* 10th Dist. No. 11AP-349, 2012-Ohio-5768; *Robinson* at ¶ 5. Furthermore, "in making a determination regarding subject-matter jurisdiction, '[t]he trial court is not confined to the allegations of the complaint,' and 'it may consider material pertinent to such inquiry without converting the motion into one for summary judgment.' " *Id.,* quoting *Southgate Dev. Corp. v. Columbia Gas Transm. Corp.,* 48 Ohio St.2d 211 (1976), paragraph one of the syllabus. This court applies "a de novo standard when we review a trial court's ruling on a Civ.R. 12(B)(1) motion to dismiss" for lack of subject-matter jurisdiction. *Id.*

### B. Discussion

{¶ 11} In general, "PUCO has exclusive jurisdiction over most matters concerning public utilities." *Allstate Ins. Co. v. Cleveland Elec. Illum. Co.,* 119 Ohio St.3d 301, 2008-Ohio-3917, ¶ 5. This exclusive jurisdiction " 'includes matters * * * such as rates and charges, classifications, and service.' " *Pacific Indem. Co. v. Deems*, 10th Dist. No. 19AP-

349, 2020-Ohio-250, ¶ 9, quoting *Valentin v. Ohio Edison,* 7th Dist. No. 11 MA 93, 2012-Ohio-2437, ¶ 9, citing *Higgins v. Columbia Gas of Ohio, Inc.*, 136 Ohio App.3d 198, 201 (7th Dist.2000), appeal not allowed by the Supreme Court of Ohio, 89 Ohio St.3d 1409 (2000).

{¶ 12} R.C. 4905.26 governs PUCO's jurisdiction and states in pertinent part:

> Upon complaint in writing against any public utility by any person * * * that any rate, fare, charge, toll, rental, schedule, classification, or service, * * * or service rendered * * * is in any respect unjust, unreasonable, unjustly discriminatory, unjustly preferential, or in violation of law, or that any regulation, measurement, or practice affecting or relating to any service furnished by the public utility, or in connection with such service, is, or will be, in any respect unreasonable, unjust, insufficient, unjustly discriminatory, or unjustly preferential, or that any service is, or will be, inadequate or cannot be obtained, * * * if it appears that reasonable grounds for complaint are stated, the commission shall fix a time for hearing and shall notify complainants and the public utility thereof. The notice shall be served not less than fifteen days before hearing and shall state the matters complained of. The commission may adjourn such hearing from time to time.

Thus, R.C. 4905.26 specifically establishes the exclusive jurisdiction of PUCO " 'to determine whether any "service rendered" by a public utility or any "practice affecting or relating to any service furnished by a public utility, or in connection with such service" is in any respect unjust, unreasonable, or in violation of law.' " *Deems* at ¶ 11, quoting *Pro Se Commercial Properties v. Illum. Co.*, 8th Dist. No. 92961, 2010-Ohio-516, ¶ 9. *See also Jones v. Ohio Edison Co.,* 11th Dist. No. 2014-A-0015, 2014-Ohio-5466, ¶ 9 (noting the Supreme Court of Ohio has interpreted R.C. 4905.26 "to confer jurisdiction upon PUCO to hear all complaints pertaining to service provided by a public utility, i.e., 'service complaints' ").

{¶ 13} Moreover, the exclusive jurisdiction of PUCO "includes complaints regarding the termination of service by public utilities." *State ex rel. Columbia Gas of Ohio, Inc. v. Henson*, 102 Ohio St.3d 349, 352 (2004), citing *Milligan v. Ohio Bell Tel. Co.*, 56 Ohio St.2d 191, (1978), paragraph two of the syllabus ("A Court of Common Pleas is without jurisdiction to hear a claim alleging that a utility has violated R.C. 4905.22 by * * * wrongfully terminating service, since such matter[] [is] within the exclusive jurisdiction of the Public Utilities Commission"); *Higgins v. Columbia Gas of Ohio, Inc.*, 136 Ohio App.3d 198, 202 (7th Dist.2000) ("refusal or termination of service by a public utility is a matter which is in the exclusive jurisdiction of the [commission], subject to an appeal to the Ohio Supreme Court").

{¶ 14} In *Allstate,* the Supreme Court adopted a two-part test from *Pacific Indemn. Ins. Co. v. Illum. Co.*, 8th Dist. No. 82074, 2003-Ohio-3954, to be used in determining whether PUCO has exclusive jurisdiction over a case. The first part of the test "asks whether PUCO's administrative expertise is required to resolve the issue in dispute." *Corrigan v. Illum. Co.,* 122 Ohio St.3d 265, 2009-Ohio-2524, ¶ 15. The second part of the test "is whether the act complained of constitutes a practice normally authorized by the utility." *Id.* at ¶ 16. " 'If the answer to either question is in the negative, the claim is not within PUCO's exclusive jurisdiction.' " *Id.* at ¶ 12, quoting *Allstate* at ¶ 12-13.

{¶ 15} A year after *Allstate*, the Supreme Court further clarified the jurisdictional issue in *Corrigan.* Quoting *State ex rel. Ohio Edison Co. v. Shaker,* 68 Ohio St.3d 209, 211 (1994), the Supreme Court held "[t]he broad jurisdiction of PUCO over service-related matters does not affect 'the basic jurisdiction of the court of common pleas * * * in other areas of possible claims against utilities, including pure tort and contract claims.' " *Corrigan* at ¶ 9. Yet, in deciding whether claims raised in a complaint are within the

exclusive jurisdiction of PUCO or, instead, are pure tort and contract claims, a court is "not limited by the allegations in the complaint." *Id*. at ¶ 10. Rather, a court "must review the substance of the claims to determine if service-related issues are involved." *Id*. Thus, "[c]asting the allegations in the complaint to sound in tort or contract is not sufficient to confer jurisdiction upon a trial court when the basic claim is one relating to service, a claim which only the PUCO has jurisdiction to resolve." *Higgins* at 202.

{¶ 16} Against the foregoing authorities, we turn to NEP's first assignment of error, which asserts that the trial court erred in improperly applying the two-prong jurisdictional test set forth in *Allstate* to NEP's claims for promissory estoppel, promissory fraud, tortious interference with contractual relations, and tortious interference with existing and prospective business relations claims. As explained below, we disagree.

{¶ 17} Regarding the first prong of the *Allstate* test, the core of NEP's four tort claims and its claim for injunctive relief is that AEP has refused to install a master meter at the five apartment complexes located within AEP's certified territory at issue in this case, and bill electric usage at those communities through a single account maintained by the owner of each community. (Compl. at ¶ 21, 35.) Thus, the substance of each of NEP's claims is, in effect, that AEP has refused to provide electric service—which is a service-related issue in the exclusive jurisdiction of PUCO. *Inland Steel Dev. Corp. v. Pub. Util. Comm.*, 49 Ohio St.2d 284, 288 (1977); *Deems*, at ¶ 11.

{¶ 18} Furthermore, determining the merits of NEP's claims requires the application of PUCO's relevant governing statutes. NEP's allegation of "disparate treatment" set forth in its complaint at ¶ 25 is a particularly good example of why these claims fall within PUCO's jurisdiction. Section 4905.35 of the Ohio Revised Code prohibits AEP from subjecting a corporation such as NEP to "undue or unreasonable advantage"; in

turn, R.C. 4905.26 provides that the exclusive private remedy for violations of any of the utility statutes is to file a complaint against the public utility with PUCO. *See* R.C. 4905.22, R.C. 4905.35; R.C. 4905.26. Indeed, NEP recently brought such a counterclaim against AEP before PUCO, and PUCO determined that it had jurisdiction over those claims. *Ohio Power Co. v. Nationwide Energy Partners, LLC, Pub. Util. Comm.* No. 21-990-EL-CSS, 2022 Ohio PUC LEXIS 344, *8-9 (Apr. 4, 2022).

{¶ 19} Additionally, consideration of NEP's tortious interference claims (tortious interference with contractual relations; tortious interference with existing and prospective business relations) necessarily requires determining whether AEP had legal justification for refusing to install the master meters as requested. *See Kenty v. Transamerica Premium Ins. Co.*, 72 Ohio St.3d 415, 418 (1995), paragraph two of the syllabus (proving a claim of intentional interference requires, *inter alia*, proving "the lack of justification"). This in turn requires considering and deciding the merits of AEP's assertion that it cannot fulfill NEP's requests because doing so would impermissibly allow NEP to act as a utility within AEP's exclusive certified territory.[1] In short, resolving NEP's claims necessarily requires PUCO's administrative expertise in analyzing and applying its own governing statutes in this case, and for that reason alone the first prong is met.

{¶ 20} A second and independently sufficient basis for finding the first *Allstate* prong is met also exists: that is, resolving NEP's claims necessarily involves a determination regarding the rights and obligations of both parties under the relevant tariffs, which set forth AEP's legal obligations to its customers. For example, reference to Paragraph 2 of the Terms and Conditions of Service ("Application for Service"), which states that electric

---

[1] This is the very question that "is one that is best left to the PUCO in the first instance." *In re Complaint of Wingo v. Nationwide Energy Partners, L.L.C.*, 163 Ohio St.3d 208, 2020-Ohio-5583, ¶ 26.

service may be "made available to a prospective customer * * * upon * * * execution of a contract therefore and acceptance by an officer or authorized representative of the Company," and Paragraph 10 of the Terms and Conditions of Service ("Extension of Local Facilities"), which requires AEP to "construct suitable electric * * * distribution facilities * * * when the customer cannot be served from existing electric facilities," would likely be necessary. P.U.C.O. No. 21, Terms and Conditions of Service, 8th Revised Sheet Nos. 103-1 and 103-5.[2] Although we note that NEP does not characterize its claims as relating in any way to the tariff, as the authorities discussed above make clear, this court must look beyond the form of the claims as asserted by NEP and "must review the substance of the claims to determine if service-related issues are involved." *Corrigan* at ¶ 10. We find that NEP's claims directly implicate the obligations of AEP provided in the tariff, and thus are properly and exclusively before PUCO. In sum, we find the first prong of the *Allstate* test is met in this case.

{¶ 21} Regarding the second prong of the *Allstate* test, we find that it too is readily met in this case. Despite the protestations of NEP that its claims are nothing more than routine construction dispute claims, it is clear the crux of these claims is the refusal by AEP to install the master meters and go to single-party billing at the five apartment complexes. In other words, all of these claims have to do with the provision—or refusal thereof—of electric service within AEP's territory. The provision of electric service is required by statute and by the obligations set forth in AEP's approved tariff and is thus an authorized utility practice. As noted by the trial court, "[t]he issue here is just what type of service Defendant AEP must provide." (Decision at 11.) As discussed above, service-related issues are within

---

[2] AEP's current approved tariff can be found at aepohio.com/lib/docs/ratesandtariffs/Ohio/October_2022%20_AEP_OhioTariff.pdf.

PUCO's exclusive jurisdiction. *See Inland Steel Dev. Corp.*, 49 Ohio St2d.284 (1977). Thus, both prongs of the *Allstate* test have been met in this case.

{¶ 22} Therefore, for the foregoing reasons, the first assignment of error is overruled.

{¶ 23} Turning to NEP's second and third assignments of error relating to NEP's claims under the Valentine Act, we find that the trial court properly dismissed these claims for lack of subject-matter jurisdiction, and properly did so sua sponte. First, NEP's contention in its third assignment of error that the trial court is not permitted to dismiss, sua sponte, claims over which it finds it does not possess subject jurisdiction is utterly without merit. It is hornbook law that a court always has the power to consider subject-matter jurisdiction sua sponte, and indeed must decline to hear and issue rulings pertaining to claims over which it lacks subject-matter jurisdiction. *Pointer v. Smith*, 10th Dist. No. 20AP-555, 2021-Ohio-2247, ¶ 8, citing *Cardi v. State*, 10th Dist. No. 12AP-15, 2012-Ohio-6157, ¶ 8, citing *Foreman v. Lucas Cty. Court of Common Pleas*, 189 Ohio App.3d 678, 2010-Ohio-4731, ¶ 12 (10th Dist.); *Adams v. Cox*, 10th Dist. No. 09AP-684, 2010-Ohio-415, ¶ 19; Civ.R. 12(H)(3) ("[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action"). Furthermore, NEP's protestations that it should have been permitted to brief this issue notwithstanding, no amount of briefing could alter the fact that if the trial court does not have subject-matter jurisdiction over these claims, it cannot preside over them.

{¶ 24} Thus, based on the foregoing, we overrule the third assignment of error.

{¶ 25} Next, regarding NEP's second assignment of error in which NEP asserts the trial court erred in dismissing NEP's antitrust Valentine Act claims under R.C. 1331, et seq., for lack of subject-matter jurisdiction, just as with its first assignment of error, NEP

again focuses solely on form over substance. NEP's antitrust claim under the Valentine Act is premised upon the allegation that AEP is abusing the "monopoly over the distribution of electricity in Franklin County" that it has "as a utility" by extending that monopoly to services where it does not apply—i.e., "the construction, measuring, invoicing, and assignment of energy costs by a property owner and/or landlord to its tenants in multi-family properties." (Compl. at ¶ 138-39.) The monopoly referred to by NEP is provided by the Certified Territory Act, R.C. 4933.81, et seq., which creates certified territories within which electric suppliers generally "have the exclusive right to furnish electric service to all electric load centers * * *." R.C. 4933.83(A).

{¶ 26} In this case, AEP asserts it has denied NEP's work orders because AEP believes that if NEP were to take over electric service to the five apartment complexes at issue in this matter, it would be operating as a "public utility" in violation of the Certified Territory Act. The Certified Territory Act is "set forth in Title 49 of the Revised Code and fall[s] within the exclusive purview of the PUCO." *Duke Energy Ohio, Inc. v. Hamilton*, 12th Dist. No. CA2018-01-001, 2018-Ohio-2821, ¶ 25. Thus, resolving NEP's purported antitrust claims would require a determination of AEP's rights and obligations under the Certified Territory Act and whether NEP's contracted services to the apartment complexes render it a public utility under R.C. 4905.02. As discussed previously, these are the very questions that require PUCO's expertise to decide, and thus are within PUCO's exclusive jurisdiction.

{¶ 27} Furthermore, NEP's argument that the trial court must hear its Valentine Act claims because PUCO has found that it lacks jurisdiction over Valentine Act claims again ignores the substance of NEP's claims. In the PUCO cases cited by NEP, the claims were in form *and* substance true antitrust claims—not claims relating to the provision of electric

service under the Certified Territory Act that are properly heard by PUCO. The fact that NEP characterized its claims as sounding in antitrust law, rather than utility law, does not change the substance of its claims.

**{¶ 28}** In short, all of NEP's claims, including its ostensible Valentine's Act claims, are premised upon the provision—or refusal thereof—of electric service within AEP's territory. And as thoroughly discussed above, service-related issues are within the exclusive jurisdiction of PUCO. *See Inland Steel Dev. Corp.*, 49 Ohio St.2d 284 (1977).

**{¶ 29}** Therefore, NEP's second assignment of error is overruled.

**{¶ 30}** Accordingly, for all of the foregoing reasons, we overrule appellant's three assignments of error, and we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

SADLER and McGRATH, JJ., concur.

———————————